# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| THOMAS HUGHES, | : | |
| Plaintiff, | : | Case No. 3:06CV387 |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.     INTRODUCTION**

Plaintiff Thomas Hughes – a former industrial cleaner and hospital cleaner – stopped working on March 21, 2003 due to certain significant health problems. He thereafter sought financial assistance from Social Security Administration by applying for Disability Insurance Benefits (DIB) claiming that his physical impairments prevented him from working.

After initial administrative denials of his application, Administrative Law Judge (ALJ) David A. Redmond held a hearing during which Plaintiff testified. Shortly after

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

the hearing concluded, ALJ Redmond issued a written decision concluding that Plaintiff did not suffer from a "disability" within the meaning of the Social Security Act. (Tr. 14-21). The ALJ's non-disability determination and resulting denial of DIB became the final decision of the Social Security Administration concerning Plaintiff's application. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), the administrative record, and the record as a whole.

Plaintiff seeks, at a minimum, a remand of this matter to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.    ADDITIONAL BACKGROUND

On the date of the ALJ's decision, Plaintiff's age (sixty-four) placed him in the category of a person "closely approaching retirement age" for purposes of resolving his DIB application. *See* 20 C.F.R. §1563(e). He has a seventh grade or "limited" education. *See* 20 C.F.R. §1564(b)(3); *see also* Tr. 324.

Plaintiff's health difficulties, at least those at issue in this case, began in January 2003 when he experienced significant stamina problems. Medical testing revealed non-Hodgkin's lymphoma. A chemotherapy regimen followed during which he reported continued fatigue; pain in his shoulder, ribs, and lower abdomen; and sore mouth and

throat. (Tr. 261-77, 315-16). In July 2003 he reported chest bone pain, nausea, anxiety, extreme weakness. Testing revealed a low white blood cell count, which prevented further chemotherapy treatment. (Tr. 269).

In August 2003 Plaintiff reported shortness of breath on exertion, fatigue, and leg swelling. Although he felt better in September, he felt worse in October 2003 with extreme fatigue, poor exertional tolerance, and bone pain. His treating oncologist, Dr. Nuthakki, was not sure what caused Plaintiff's fatigue. On October 3, 2003, Dr. Nuthakki's treatment notes indicated his concern over "residual disease or recurrence...," and his opinion that Plaintiff "cannot work at all." (Tr. 263-64).

In August 2004 Dr. Nuthakki wrote to Plaintiff's counsel outlining the history of Plaintiff's lymphoma treatment and his complete remission "based on the radiological work up done in August of 2003." (Tr. 260). Dr. Nuthakki identified Plaintiff's continuing symptoms as fatigue and shortness of breath on exertion. He explained, "At this time, I do not know whether his disease is recurring or not unless we do the CAT scans. On examination, there is no evidence of recurrence of lymphoma, but complete information can be obtained only after the radiological work up." (Tr. 260). Dr. Nuthakki also recognized the possibility of chronic cardiac disease, according to the work up done by another physician, Dr. Anike. *Id.*

Plaintiff's Statement of Errors explains that he "did indeed have pre-existing heart problems." (Doc. #6 at 4). He began seeing cardiologist Dr. Orem in May 2003 from whom Plaintiff obtained cardiac testing and clearance to undergo chemotherapy.

3

Plaintiff began treatment with cardiologist Dr. Anike in September 2003. *Id.* at 4-5 (and record citations therein). Based on the results of an angiogram on September 9, 2003, Dr. Anike believed Plaintiff suffered from mild coronary artery disease (CAD), 30% disease of the left anterior descending (LAD) artery, mild left ventricular dysfunction with a left ventricular ejection fraction of 46%, hypertension, and shortness of breath secondary to diastolic dysfunction. (Tr. 222) Dr. Anike found Plaintiff's other coronary arteries to be without disease, and he noted no valvular disease. *Id.*

Another physician, Dr. Sethi, performed a consultative evaluation in March 2004. He concluded:

> Based on my objective findings, the claimant's ability to do work-related physical activities such as sitting, walking, lifting, carrying and handling objects and traveling is markedly limited due to his marked feeling of weakness and tiredness all over.

(Tr. 227).

In April 2004 Dr. Morton, a non-treating physician, assessed Plaintiff's residual functional capacity at the request of the Ohio Bureau of Disability Determinations. (Tr. 236-43). Based on his review of the record, Dr. Morton concluded that Plaintiff could perform medium work on a full-time basis as long as the work only occasionally required him to climb ladders, ropes, or scaffolds. (Tr. 240).

Later that year, in October 2004, Plaintiff's treating physician for approximately ten years – Dr. Paulus – wrote a letter explaining that Plaintiff's lymphoma "symptoms seem to be in remission, however his ability to do physical work remains extremely

4

limited." (Tr. 303). Dr. Paulus noted, "He has associated diagnoses of mild coronary artery disease, hypertension, and dyspnea on exertion...." (Tr. 303). Dr. Paulus concluded his letter explaining his agreement with Dr. Sethi's opinion that Plaintiff had markedly limited ability to sit, stand, walk, lift, carry and inhale objects." (Tr. 303).

During the ALJ's hearing, non-treating physician Dr. Boyce testified as a medical expert. After detailing the contents of the record, Dr. Boyce testified:

[ALJ's] Q: Now, what residual functional capacity would you expect to find in a person with a chart like this one?

A: Well, aside from the issue of fatigue, I would expect that they would be able to do at least a level of medium work. The fatigue seems to be an issue, although I can't find an objective reason for it because one would normally anticipate that after you've gone into remission and gone through the period of chemotherapy that the fatigue factor tends to dissipate within about three to six months after the discontinuation of the chemotherapy and/or radiation therapy.

(Tr. 329). Dr. Morton also opined that Plaintiff's cardiologist and oncologist were "somewhat mystified" about the cause of his ongoing fatigue. (Tr. 328).

### III. ADMINISTRATIVE REVIEW AND DECISION

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national

economies.[2] *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R. §404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the five Steps answer five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ's sequential evaluation in Plaintiff's case ended at Step 4 where the ALJ made several key findings:

• Plaintiff's testimony lacked credibility, to the extent he described disabling impairments;

---

[2] Impairments must also be either expected to cause death or last twelve months or longer. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

- Plaintiff could perform the full range of medium exertional work;[3] and

- Plaintiff retained the residual functional capacity to perform his past relevant jobs as an industrial cleaner and hospital cleaner.

(Tr. 20). These findings, along with the ALJ's findings throughout Steps 1 to 4, led him to conclude that Plaintiff was not under a disability and not eligible for DIB. (Tr. 20-21).

## IV. JUDICIAL REVIEW

Judicial review determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential, not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). An ALJ's factual findings must be upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90). Once substantial supporting evidence is found in the administrative record, courts do not consider whether they agree

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

or disagree with the ALJ's findings or whether the administrative record contains contrary evidence. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, the presence of substantial evidence is not the analytical stopping point. Judicial review further considers whether the ALJ "applied the correct legal criteria." *Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be upheld even if the findings are supported by substantial evidence. *See id*. For example, a decision will not be upheld where the ALJ failed to apply mandatory procedural rules and standards established by the Commissioner's Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein).

V.     **DISCUSSION**

    A.     **Medical Source Opinions**

**1.**
**The Parties' Contentions**

Plaintiff contends that the ALJ erred by rejecting the opinions of his long-time treating physician Dr. Paulus and the opinions of Dr. Sethi, a consultative examiner. Plaintiff reasons that these physicians' opinions establish the marked impairments Plaintiff has in his ability to perform work activities. He further reasons that objective medical evidence supports these physicians' opinions and that the ALJ failed to weigh their opinions as the Regulations required. Plaintiff further argues that the ALJ erred by

relying on the opinions of a non-treating, record-reviewing physician, Dr. Boyce. Lastly, Plaintiff challenges the ALJ's credibility assessment and his finding that Plaintiff's claimed limitations lacked credibility.

The Commissioner contends, for various specific reasons, that substantial evidence supports the ALJ's assessment of Plaintiff's residual functional capacity, his rejection of Drs. Paulus and Sethi's respective opinions, and his reliance of medical expert Dr. Boyce. (Doc. #9 at 7-12).

The ALJ's assessment of Plaintiff's residual functional capacity to be within a limited range of medium work was a critical – indeed, dispositive – component of his non-disability finding. A finding of a more restrictive RFC (*i.e.*, Plaintiff could only do light or sedentary work) would have triggered the so-called Grids, thus requiring the ALJ to conclude that Plaintiff was under a disability due to the combination of his limited (light or sedentary) RFC, his age, and his limited education.[4] *See* Doc. #6 at 13 (and citations therein).

## 2.
## Applicable Legal Criteria

ALJs are required to evaluate every medical opinion of record, regardless of its source. *See* 20 C.F.R. §404.1527(d). The evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight, under the treating

---

[4] The "Grids" are found in the Regulations under the Medical-Vocational Guidelines, 20 C.F.R. Subpart P, Appendix 2.

9

physician rule, as long as they are (1) well supported by medically acceptable data, and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §404.1527(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id*. But, the evaluation does not stop; the ALJ must continue to weigh the treating medical source's opinions under the following factors: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (discussing §404.1527(d)).

As to non-treating medical sources, the Regulations require ALJs to weigh their opinions under the factors – supportability, consistency, specialization, *etc*. – described in 20 C.F.R. §404.1527(d). The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see also* 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

### 3.
### Analysis

The ALJ described and applied the correct legal criteria to the medical source opinions of record. He set forth the correct standards under the treating physician rule and applied those standards evaluating treating physician Dr. Paulus' opinions. *See* Tr. 18. After declining to apply the treating physician rule, the ALJ continued to weigh Dr. Paulus' opinions as required by the Regulations and caselaw, *see Wilson*, 378 F.3d at 544, by applying the "supportability" and "consistency factors." *See* Tr. 18. The ALJ also applied these regulatory factors to weigh and discount the opinions of consulting physician, Dr. Sethi, and when weighing and accepting the opinions of non-treating, record-reviewing physician, Dr. Boyce. *See* Tr. 17-18. The ALJ therefore did not err as a matter of law when evaluating these medical source opinions.

Turning to the ALJ's application in light of the evidence of record, the Commissioner is correct that substantial supporting evidence supports the ALJ's findings. The ALJ did not reject Dr. Paulus' opinion solely because it was premised upon Dr. Sethi's assessment. Instead, the ALJ found Dr. Paulus' assessment of Plaintiff's functional abilities not due controlling weight because it was not supported by proportionate objective findings. (Tr. 18). Although Dr. Paulus' October 2004 letter refers to "objective findings," the letter is conclusory and based on Plaintiff's subjective report of symptoms. *See* Tr. 303. Substantial evidence therefore supports the ALJ's

11

rejection of Dr. Paulus' opinions. *Cf. Smith v. Commissioner of Social Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (ALJ did not err by rejecting physicians' opinions that were based solely on patient's subjective reports of symptoms).

The ALJ also explained that Dr. Sethi's opinion was not entitled to significant weight because he also neglected to identify any objective medical findings in support of his assessment. See Tr. 17-18. A review of Dr. Sethi's opinion confirms the ALJ's explanation. Dr. Sethi indicated that Plaintiff's abilities were "markedly limited due to his marked feeling of weakness and tiredness all over," (Tr. 227), but his physical examination only revealed some diffuse arthritic changes in Plaintiff's knees and tenderness in the lumbar and cervical spine areas. (Tr. 226-27). Dr. Sethi expressly noted that Plaintiff's neurological examination was normal. (Tr. 227). Considering the lack of any significant objective findings in support of Dr. Sethi's assessment, substantial evidence supports the ALJ's rejection of Dr. Sethi's assessment.

Further, other record evidence failed to support Dr. Paulus' opinion that Plaintiff had marked limitations. For example, according to Dr. Anike, a September 2003 angiogram revealed mild coronary artery disease involving the mid-left anterior descending artery 30% disease; other coronaries were without disease and the left ventricular ejection fraction was estimated at 45%. (Tr. 221). No significant valvular disease was noted. (Tr. 221). A September 2003 echocardiogram revealed suggestions of diastolic dysfunction with trace-to-mild mitral regurgitation and mild tricuspid regurgitation; no valvular stenosis was noted. (Tr. 221). When Dr. Anike saw Plaintiff in

October 2003, he noted that physical examination was unremarkable. (Tr. 221). Dr. Anike wrote to Plaintiff's attorney in December 2004 and reported that the cardiac information indicated a rather stable patient from a cardiac standpoint; Plaintiff was only slightly limited by dyspnea during activities but mostly complained of generalized fatigue which was noncardiac in etiology. *See* Tr. 317. Dr. Anike suggested that Plaintiff's functional capacity limitations from his history of non-Hodgkin's lymphoma be obtained from his primary physician and hematology oncologist. (Tr. 317). He added that Plaintiff's complaints of generalized fatigue could not be accounted for based on his left ventricular ejection fraction or coronary anatomy. (Tr. 317). For these reasons, contrary to Plaintiff's contentions, Dr. Anike's report does not support Dr. Paulus' opinion that Plaintiff's work abilities were markedly limited.

Similarly, Dr. Nuthakki's August 2004 letter did not corroborate Dr. Paulus' opinion. *See* Tr. 260. As Plaintiff acknowledges, neither Dr. Anike nor Dr. Nuthakki offered an assessment of his physical abilities. (Doc. #6 at 11). Although Dr. Anike expressed some concern over whether the lymphoma was recurring, he found "no evidence of recurrence" on examination and noted, "complete information can be obtained only after the radiological work up." (Tr. 260). The record contains no subsequent objective evidence indicating a recurrence of lymphoma. Without such evidence, and in light of Dr. Nuthakki's acknowledged need for additional testing, Dr. Nuthakki's letter does not conflict with the ALJ's findings.

Substantial evidence also supports that ALJ's acceptance of Dr. Boyce's opinion

13

that Plaintiff could perform a limited range of medium exertional work. Dr. Boyce reviewed the record evidence and recognized that Plaintiff's medical history included heart disease, non-Hodgkin's lymphoma, and an ongoing problem of fatigue with some shortness of breath as well as arthritis in his knees and degenerative disc disease and minimal decrease in range of motion of his cervical spine (Tr. 326-28). Nevertheless, he concluded that Plaintiff could perform medium exertional work, due to the lack of an objective reason for Plaintiff's fatigue. *See* Tr. 329. Dr. Boyce testified that he considered the symptom of fatigue in limiting Plaintiff to medium exertional work. *See* Tr. 329. In response to questions posed by Plaintiff's counsel, Dr. Boyce stated that Dr. Sethi's conclusions seemed to be based on Plaintiff's statements of feelings, not on the objective physical examination. *See* Tr. 333. For these reasons, and contrary to Plaintiff's contentions, Dr. Boyce's testimony was not inaccurate and the ALJ did not consider only part of it. Although Dr. Boyce expressed some concern for the absence of such findings, and although he recognized that Plaintiff's physicians were "somewhat mystified" by his fatigue, it is reasonable to read and understand Dr. Boyce's testimony, as the ALJ did, to state that Plaintiff could perform medium exertional work, even considering his reported levels of fatigue. *See* Tr. 328-29.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions of record lack merit.

    **B.**    **Plaintiff's Remaining Claims**

Plaintiff asserts that the ALJ erred by finding Plaintiff's reports of fatigue and pain

to lack credibility. Plaintiff emphasizes that the treating and evaluating physicians, as well as the objective evidence, supports the credibility of his testimony about his levels of extreme fatigue, shortness of breath, neck pain, hip pain, and back pain.

The ALJ's decision described and applied the legal criteria required by the Regulations and case law. *See* Tr. 18-19; *see also* 20 C.F.R. §404.1529; *Walters v. Commn'r. of Social Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997). In doing so, the ALJ did not err as a matter of law.

Substantial evidence supports the ALJ's conclusion that certain credibility factors undermined Plaintiff's allegations of disabling fatigue, shortness of breath, and pain. *See* Tr. 18-19. Contrary to Plaintiff's claim, the ALJ discussed the relevant evidence of record and identified the requisite credibility factors. *See id*. A claimant must present more than his subjective complaints of disabling symptoms. *See* 20 C.F.R. §404.1529 ("statements about your pain or other symptoms will not alone establish that you are disabled."); *see also* Social Security Ruling 96-7p. Although Plaintiff asserts that the record contained objective findings supporting his subjective reports, for the reasons discussed above, the evidence of record does not substantiate his assertion. *See supra*, §V(A)(3).

The ALJ also discussed additional credibility factors. For example, considering Plaintiff's course of medical treatment and use of medications, the ALJ noted that Plaintiff's fatigue and weakness might have been reasonable during chemotherapy and for a short time afterwards, however it was not reasonable to find that he continued to

15

experience it more than a few months after September 2003, the time chemotherapy ceased. (Tr. 19). Dr. Boyce's testimony supported these observations by the ALJ. Regarding Plaintiff's medications, the ALJ appropriately noted that Plaintiff's only alleged side effect was stomach problems. (Tr. 19; *see* Tr. 334). Plaintiff had previously reported to the state agency that he did not experience any medication side effects. (Tr. 91). Plaintiff's course of medical treatment and his use of medication supports the ALJ's finding that Plaintiff's subjective reports of disabling symptoms were not fully credible.

Additionally, the ALJ considered Plaintiff's daily activities, noting that he performed some household chores, such as mowing the lawn and vacuuming. (Tr. 19, 335). Plaintiff also did the dishes once in a while, went to church, associated with people, and played the guitar. (Tr. 335). And, while the ALJ acknowledged that Plaintiff's reported activity level was essentially sedentary, the ALJ appropriately noted that it was more a choice Plaintiff made, due to the absence of some objective medical evidence indicative of further functional restrictions. (Tr. 19). Lastly, contrary to Plaintiff's contention, the ALJ considered his impairments in combination and expressly discussed his non-Hodgkin's lymphoma and chemotherapy. *See* Tr. 15-19.

Accordingly, the ALJ considered the requisite credibility factors reasonably concluded Plaintiff's complaints of disabling symptoms were not fully credible. The credibility findings were therefore within the ALJ's "zone of choice" and may not be disturbed on judicial review. *See Elliott v. Apfel*, 28 Fed.Appx. 420, 426 (6th Cir. 2002)("The substantial-evidence standard gives ALJs a "zone of choice" in which they

can go either way, without being second-guessed by federal court.")(citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be affirmed; and

2. The case be terminated on the docket of this Court.


February 8, 2008                                        s/Sharon L. Ovington
                                                        Sharon L. Ovington
                                                        United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).